UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALICIA MARIE RAMOS,
As Personal Representative of the Estate of
James J. Ramos,

                    Plaintiff,

-vs-                                                    Case No. 6:09-cv-00276-GJK

THE UNITED STATES OF AMERICA,

                    Defendant.
_____

## ORDER AND NOTICE OF EVIDENTIARY HEARING

This cause came on for consideration without oral argument on Defendant's Motion to
Dismiss or, Alternatively Motion for Summary Judgment and Memorandum of Law filed on
January 27, 2010. Doc. No. 23.

### I.   BACKGROUND.

On December 6, 2004, James J. Ramos (the "Decedent") visited the Pine Hills Family
Health Center ("Pine Hills") and was treated by Dr. Carmine Gipson, an employee of Pine Hills,
for pain in his lower left leg. Doc. No. 1 ¶ 13. Decedent had a history of Deep Vein
Thrombosis, Supraventricular Tachycardia, and Pulmonary Embolisim. *Id.* ¶ 14. On December
29, 2004, Decedent visited Pine Hills, due to difficulty breathing, and was treated by Dr. Michael
Ham-Ying, also an employee of Pine Hills. *Id.* ¶¶ 17-18. On December 31, 2004, Decedent
died. *Id.* ¶ 21.

On January 10, 2005, a medical examiner determined that Decedent died from a massive pulmonary embolism. Doc. No. 28 at 2. On that date, Alicia Marie Ramos, daughter of Decedent and personal representative of his estate (the "Plaintiff"), became aware that she had a potential cause of action for medical malpractice against Pine Hills and Drs. Gipson and Ham-Ying. *Id.*[1] On January 13, 2005, Plaintiff requested a copy of Decedent's "entire record" from Pine Hills. Doc. No. 39 at 2, 18. On December 22, 2005, Plaintiff requested "any and all medical records, chart notes, and x-ray results, … a clean, itemized bill for medical services rendered," and itemized medical billing statements. *Id.* at 11, 13. On both occasions Plaintiff received the same six (6) pages of records. *Id.*[2] On November 6, 2006, Plaintiff filed a 90-day extension of the Florida statute of limitations, pursuant to Section 766.104(2), Florida Statutes. Doc. No. 28 at 2.[3]

On March 31, 2007, Plaintiff notified Pine Hills, by letter, of her intent to initiate litigation for medical malpractice and wrongful death relating to the Decedent. *Id.* at 3. On April 4, 2007, Pine Hills notified Plaintiff, by letter, that Pine Hills was covered under the Federal Tort Claims Act (the "FTCA"). Doc. No. 23-1 at 15. On August 2, 2007, Plaintiff filed an administrative claim, pursuant to the FTCA, with the United States Department of Health and Human Services (the "DHHS"). *Id.* at 2. On February 26, 2008, DHHS notified Plaintiff of the agency's final determination denying her claim as time barred under 28 U.S.C. § 2401(b). *Id.* at

---

[1] The parties stipulate that on January 10, 2005, Plaintiff recognized she had a potential cause of action for medical malpractice against Pine Hills and the doctors. *See* Doc. 23-1at ¶ 4; 28 at 2 ¶ 2.

[2] The six pages consisted of two (2) Adult Office Visit notes, two (2) pages of an EKG report, and two (2) pages of a laboratory report. Doc. No. 39 at 2.

[3] Section 766.104(2), Florida Statutes, provides for an automatic 90-day extension of the Florida statute of limitations, for medical negligence cases, upon petition to the state court where the case will be filed. § 766.104(2), Fla. Stat.

20.[4]  On June 16, 2008, DHHS received a written request by Plaintiff for reconsideration of her claim. Doc. No. 40 ¶ 1. On August 11, 2008, DHHS again denied Plaintiff's claim as untimely. *Id.*

On February 11, 2009, Plaintiff initiated this action by filing a complaint (the "Complaint") against the United States (the "Defendant") pursuant to the FTCA alleging negligence on the part of Defendant's employees, and Pine Hills, resulting in the death of the Decedent. Doc. No. 1. On July 2, 2009, Defendant filed an answer (the "Answer"). Doc. No. 8.

On January 27, 2010, Defendant filed a Motion to Dismiss or, Alternatively, Motion for Summary Judgment (the "Motion to Dismiss") arguing that this Court lacks subject matter jurisdiction because Plaintiff's claim is time barred by the two year statute of limitations set forth in 28 U.S.C. § 2401(b). Doc. No. 23. Defendant maintains that the claim arose on January 10, 2005, when Plaintiff became aware that she had a potential cause of action against Pine Hills and Drs. Gipson and Ham-Ying, but Plaintiff failed to timely present an administrative claim to DHHS within two years. Doc. No. 23 at 13-20. Defendant argues that equitable tolling is not applicable or appropriate in this case because Plaintiff cannot demonstrate that the untimely filing was due to an extraordinary circumstance beyond the control of Plaintiff and unavoidable even with diligence. *Id.* at 16. Defendant also asserts that the ninety (90) day extension of the statute of limitations Plaintiff received under Florida law does not apply to a claim under the FTCA and, even if it did apply, Plaintiff's claim would still be untimely. *Id.* at 17.

On February 26, 2010, Plaintiff filed a response (the "Response") to the Motion to Dismiss. Doc. No. 28. Although Plaintiff admits that on January 10, 2005, she was aware that

---

[4] Section 2401(b) provides that a tort claim against the United States is forever barred if it is not presented to the appropriate federal agency within two years. 28 U.S.C. § 2401(b) (2006).

she had a cause of action against Pine Hills and Drs. Gipson and Ham-Ying, she states she did not know she had a cause of action against Defendant (the Government) until April 4, 2007, the date Plaintiff learned that Pine Hills is federally funded. Doc. No. 28 at ¶ 5. Plaintiff states that she pursued her claim for medical malpractice against Pine Hills and the doctors with diligence and asserts: "[T]here was nothing that Plaintiff could have done, before filing her letter of intent to initiate suit [on March 31, 2007] that would have given Plaintiff any reason to think that the government may have caused her father's death." Doc. No. 28 at 5-7 (emphasis added). Thus, Plaintiff maintains that her claim did not accrue until April 4, 2007. *Id.* at 6. Alternatively, Plaintiff maintains the Court should equitably toll the statute of limitations because Plaintiff has diligently pursued the claim. Doc. No. 28 at 8-10.

On April 9, 2010, Defendant produced an additional seventy-seven (77) pages of records regarding the Decedent, including a one page sliding scale application which Plaintiff maintains would have put her on notice that Pine Hills is federally funded. Doc. No. 36 at 1; 34; Doc. No. 39 at 3-4. On May 5, 2010, Plaintiff filed a Supplemental Memorandum and Response to the Motion to Dismiss (the "Supplemental Response"). Doc. No. 35. In the Supplemental Response, Plaintiff states:

> Defendant's failure to produce all medical records on [the Decedent] when requested by Plaintiff on December 22, 2005 violates Section 766.204, Florida Statutes, is evidence of bad faith and constitutes concealment of evidence. Plaintiff would have been potentially alerted by these additional medical records to the fact that the Defendant was a government funded and/or federally funded clinic and would have learned this in January 2006 and been able to file her Form 95 within two years of [the Decedent's] death had the Defendant produced all 77 pages of Plaintiff's medical record when demanded by Plaintiff's December 22, 2005 records request letter. Defendant should not be allowed to conceal

evidence in violation of Florida law and then turn around and
dismiss the Plaintiff's claim based on late notice.

Doc. No. 35 at 3 (emphasis added). Accordingly, Plaintiff requests that the Court deny the
Motion to Dismiss and sanction the Defendant "for its bad faith, violation of Florida Law and
concealment by striking Defendant's answer and affirmative defenses to this lawsuit." *Id.*[5]

On May 10, 2010, Defendant filed a Reply to Plaintiff's Supplemental Response (the
"Reply"). Doc. No. 37. In the Reply, Defendant states that the seventy-seven (77) pages are not
actually medical records, but rather are "letters from attorneys, driver licenses, numerous
administrative documents, and multiple copies of the same document." *Id.* at 2.

On May 17, 2010, Plaintiff filed a Motion for Sanctions Against Defendant (the "Motion
for Sanctions"). Doc. No. 39. In the Motion for Sanctions, Plaintiff alleges that Defendant
fraudulently concealed relevant medical records and, therefore, has worked a fraud against both
the Plaintiff and this Court by filing the Motion to Dismiss. *Id.* at 4-6. Plaintiff states that Pine
Hills' record custodian, Sherrie Carchide, "admitted ... that the sliding scale document which
she failed to produce to the plaintiff was pertinent and relevant to the fact that the clinic was
federally funded." *Id.* at 3. Plaintiff states that Defendant should be held accountable for
violations under Rule 37(c), Federal Rules of Civil Procedure, for fraudulent concealment, and
for violation of Sections 766.204(1) and (2), Florida Statutes. *Id.* at 7.[6] Plaintiff seeks sanctions
against Defendant, including; 1) equitable tolling of the accrual date of Plaintiff's claim; 2) an

---

[5] It is inappropriate to request affirmative relief in a response to a motion.
[6] Section 766.204(1) provides that copies of medical records relevant to litigation of a medical negligence claim
shall be provided to the claimant within ten (10) business days of a request for copies. § 766.204, Fla. Stat. (2010).
Section 766.204(2) provides that the failure to comply with Section 766.204(1) shall waive the requirement that the
requesting party provide written medical corroboration of reasonable grounds to initiate medical negligence
litigation (required under Section 766.203(2)). *Id.*

order striking Defendant's Answer and affirmative defenses; and 3) entry of default judgment against the Defendant. *Id*. at 9.

On May 25, 2010, Plaintiff filed the Deposition Transcript of Ms. Carchide (the "Deposition of Ms. Carchide"), in which Ms. Carchide testified about the scope of Pine Hills' protocol for releasing medical records. Doc. No. 41. In this deposition, Ms. Carchide testified that the sliding scale application is not part of the protocol and, therefore, was not released as medical records. *Id*. at 18-19; 24-25; 42-43. On June 6, 2010, Defendant filed a Response to Plaintiff's Motion for Sanctions (the "Response to Motion for Sanctions"). Doc. No. 42. In the Response to Motion for Sanctions, Defendant states that Plaintiff has failed to identify which medical record(s), allegedly withheld, would have put Plaintiff on notice that Pine Hills is federally funded. *Id*. at 2. Defendant also states that Sections 766.204(1) and (2), Florida Statutes, do not apply in an FTCA action because those sections are procedural in nature and conflict with the Federal Rules of Civil Procedure. *Id*. at 3-5. On June 9, 2010, Plaintiff filed a Motion for Leave to File a Supplemental Response in Support of Plaintiff's Motion for Sanctions, which remains pending. Doc. No. 43.

The parties have consented to a bench trial before the undersigned Magistrate Judge, and trial is set for November 1, 2010. Doc. Nos. 16 at 2; 19.

## II.   DISCUSSION.

### A.   Rule 12(b)(1) Motion to Dismiss.

There are two types of challenges to the Court's subject matter jurisdiction: facial and factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). In *Morrison v. Amway Corp.*, 323 F.3d 920, 924-25 n.5 (11th Cir. 2003), the Eleventh Circuit explained:

> Facial attacks challenge subject matter jurisdiction based on the
> allegations in the complaint, and the district court takes the
> allegations as true in deciding whether to grant the motion. Factual
> attacks challenge subject matter jurisdiction in fact, irrespective of
> the pleadings. In resolving a factual attack the district court may
> consider extrinsic evidence such as testimony and affidavits.

*Id.* Thus, a factual attack relies on extrinsic evidence and does not assert lack of subject matter

jurisdiction based solely on the pleadings. *Id.* In *Morrison*, the Eleventh Circuit further stated

that where a factual attack does not implicate the merits of the underlying cause of action, a trial

court is "free to independently weigh facts" and "'no presumptive truthfulness attaches to

plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court

from evaluating for itself the merits of the jurisdictional issue.'" *Id.* at 925 (quoting *Lawrence*,

919 F.2d at 1529). In a factual challenge to the Court's subject matter jurisdiction, "the burden is

on the plaintiff to prove that jurisdiction exists." *OSI, Inc., v. United States*, 285 F.3d 947, 951

(11th Cir. 2002).

The Court construes the Motion to Dismiss as a Rule 12(b)(1), Federal Rules of Civil

Procedure, motion because it is a factual attack on the Court's subject matter jurisdiction, it relies

on extrinsic evidence, and it does not implicate the merits of Plaintiff's underlying claims.

*Morrison*, 323 F.3d at 924-25 n.5.

### B. FTCA Statute of Limitations.

A tort claim against the Defendant must be presented to the appropriate federal agency

within two years after the claim accrues. 28 U.S.C. § 2401(b) (2006). In the context of medical

malpractice claims, however, the United States Supreme Court has held that the statute of

limitations accrues when a plaintiff: 1) knows of the injury; and 2) knows the cause of the injury

or, through the exercise of due diligence, should know the cause of the injury. *United States v. Kubrick*, 444 U.S. 111, 114 (1979). The Eleventh Circuit has held a plaintiff's knowledge of the alleged tortfeasor's employer is not necessary for a cause of action to accrue in an FTCA case. *Jones v. United States*, 294 F. App'x 476, 480 (11th Cir. 2008) (unpublished).[7] *See also Gould v. United States Dep't of Health & Human Servs.*, 905 F.2d 738, 745 (3d. Cir. 1990) ("The burden is on the plaintiff to discover the employment status of the tort-feasor and to bring suit within the applicable time period.").

In the present case, the statute of limitations began running on January 10, 2005, because on that date Plaintiff was aware of both her injury (Decedent's death) and its cause (a massive pulmonary embolism). *See* Doc. No. 1 ¶ 21; Doc. No. 28 at 2. Accordingly, absent application of equitable tolling, the statute of limitations expired on January 10, 2007. Therefore, the only issues remaining are whether Plaintiff can demonstrate that the statute of limitations should be tolled based on principles of equity or fraudulent concealment.

## C. Equitable Tolling.

In order to be entitled to equitable tolling, a movant must show that she "untimely file[d] because of <u>extraordinary circumstances that are both beyond h[er] control and unavoidable even with diligence</u>." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis added). In order to toll the statue of limitations based on fraudulent concealment, a plaintiff has the burden to show deliberate and successful concealment of facts which form the basis of the plaintiff's claim and the plaintiff's diligence until the discovery of the concealment. *See Prather v. Neva Paperbacks, Inc.,* 446 F.2d 338, 341 (5th Cir. 1971); *see also Robinson v. United States*,

---

[7] Unpublished decisions of the Eleventh Circuit are not binding, but are persuasive authority.

327 F. App'x 816, 819 (11th Cir. 2007) (holding that a plaintiff is entitled to equitable tolling where the deliberate or affirmative misconduct on the part of the defendant induces a plaintiff into allowing the statute of limitations to pass).[8] "The question of whether there was fraudulent concealment and whether due diligence was exercised to learn facts are questions of fact ...." *In re Kaufman & Roberts, Inc.*, 188 B.R. 309, 314 (Bankr. S.D. Fla. 1995).[9]

In the Response, Plaintiff initially alleged that she is entitled to equitable tolling based on the diligence she exercised in pursuing her claim. Doc. No. 28 at 9. In the Motion for Sanctions, Plaintiff alleges that she is entitled to equitable tolling due to Defendant's fraudulent concealment of certain documents. Doc. No. 39 at 3-4, 6-7. In light of the fact that it was not until after Plaintiff filed the Response that Defendant produced the full seventy-seven (77) documents, and the fact that the deposition of Sherrie Carchide had not yet been taken, the Court construes the Motion for Sanctions, insofar as it requests equitable tolling due to fraudulent concealment and failure to make a full records production, as a supplemental response to the Motion to Dismiss.[10]

In order to prevail on a claim of fraudulent concealment Plaintiff must demonstrate that she is entitled to equitable tolling of the statute of limitations due an extraordinary circumstance that was beyond her control even through the exercise of diligence. Plaintiff may demonstrate that she is entitled to equitable tolling if she can prove that the Defendant deliberately and successfully concealed the identity of the Government, such that she was lulled or tricked into

---

[8] All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *See Bonner v. Ctiy of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[9] It appears that since 2001, the Government has operated a hotline (866-FTCA-HELP) and a website (http://findahealthcenter.hrsa.gov) which provides assistance in identifying federally funded clinics. *See A.Q.C. v. United States*, No. 09 Civ. 9113(NRB), 2010 WL 2102827 at *7 (S.D.N.Y. May 14, 2010).

[10] The Court notes that the proper way to present the newly discovered evidence would have been to request leave to amend the original Response.

9

allowing the statute of limitations to run, and that she could not have discovered the identity of the Government even through the exercise of diligence. These are issues of fact the Court cannot decide without an evidentiary hearing. Therefore, the Court will hold an evidentiary hearing to determine whether Plaintiff is entitled to equitable tolling of the statute of limitations.

TAKE NOTCIE that it is hereby **ORDERED** that:

1. An evidentiary hearing will commence on Monday, August 23, 2010 at 9:00 A.M. in Courtroom #3C before the undersigned;

2. **At least two (2) weeks before the evidentiary hearing**, lead counsel shall meet and:

   a. **Identify, examine, tag, mark, cop, list and exchange** all original exhibits (including actual document exhibits) that any party will offer in evidence or otherwise tender to any witness during the hearing [See Local Rule 3.06(b)(3) and 3.07(a)]; and prepare and exchange a final exhibit list on the Clerk's approved form bearing a description identifying each exhibit and sponsoring witness [Local Rule 3.07(b)].[11] It is anticipated that counsel will agree to the admission of the bulk of the opposing parties' exhibits without objection and shall designate on the exhibit list the exhibits which the Court may admit without objection at trial; and[12]

   b. Exchange the names and addresses of all witnesses and state whether they will likely be called;

---

[11] The parties must bring their exhibits to the meeting for examination, copying, tagging and marking.

[12] Absent good cause, the Court will not receive in evidence over objection any exhibits – including charts, diagrams, and demonstrative evidence – not presented to opposing counsel or unrepresented parties for inspection and copying at the required meeting. Photographs of sensitive exhibits (i.e. guns, drugs, valuables) and of non-documentary evidence, and reductions of documentary exhibits larger than 8 1/2" by 14" to be substituted for original exhibits after conclusion of the hearing must be presented to opposing counsel for examination at the meeting. Objections to such photographs or reductions of exhibits must be listed.

3. At least one (1) week before the evidentiary hearing, the parties shall file the final exhibit list and witness list of those expected to be produced at the hearing. The exhibit list filed in compliance with Local Rules 3.06(c)(4) and 3.07(b) must be on the Clerk's approved form (attached to this order). Unlisted exhibits will not be received into evidence at the hearing, except by order of the Court in the furtherance of justice. *See* Local Rule 3.06(e). The final copy must attach each party's exhibit list on the approved form listing each party's *specific* objection ("all objections reserved" does *not* suffice) to each numbered exhibit that remains after full discussion and stipulation. Any objections must be made in good faith. Otherwise, sanctions may be imposed. Objections not made-or not made with specificity-are waived. Each party shall file their respective lists with the Court;

4. The exhibit list must be on the Clerk's approved form (attached to this order). Unlisted exhibits will not be received into evidence, except by order of the Court in furtherance of justice. *See* Local Rule 3.06(e);

5. On the witness list required by Local Rule 3.06(c)(5), the parties and counsel shall designate which witness will likely be called, and also designate which witnesses may be called. Absent good cause, the Court will not permit over objection testimony from unlisted witness at the hearing. This restriction does not apply to true rebuttal witnesses (i.e., witnesses whose testimony could not reasonably have been foreseen to be necessary). Records custodians may be listed but will not likely be called at the hearing, except in the rare event that authenticity or foundation is contested. For good cause shown in compelling circumstances, the Court may permit presentation of

11

testimony in open court by contemporaneous transmission from a different location. Fed.R.Civ.P. 43(a); and

6. On the day of the hearing, the parties shall provide to the Court a bench notebook containing marked copies of all exhibits.

**DONE and ORDERED** at Orlando, Florida on July 21, 2010

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record



# EXHIBIT LIST

___ Government      ___ Plaintiff      ___ Defendant      ___ Court

**Case No.** _____

**Style:** _____

| Exhibit No. | Date Identified | Date Admitted | Sponsoring Witnesses | Objections / Stipulated Admissions[2] | Description of Exhibit |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

---

[2]Use a code (e.g. "A"or "*") in this column to identify exhibits to be received in evidence by agreement without objection. Otherwise, specifically state each objection to each opposed exhibit. Please note that each date box on the left must be one inch wide to accommodate the Clerk's date stamp.